# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2988 | **DATE** | 8/10/2004 |
| **CASE TITLE** | Willie B. Ozier vs. Jo Anne B. Barnhart | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion for summary judgment [11-1] is granted. Commissioner's motion for summary judgment [12-1] is denied. Accordingly, this case is remanded to the Commissioner for further proceedings.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required, | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 11 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 14 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/10/2004 | |
| | | | date mailed notice | |
| IS | courtroom deputy's initials | CLERK, U.S. DISTRICT COURT | | |
| | | 2004 AUG 10 PM 3: 56 | IS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



AUG 1 1 2004

WILLIE B. OZIER,                    )
                                    )
                Plaintiff,          )    Case No. 03 C 2988
                                    )
        v.                          )    Magistrate Judge
                                    )        Martin C. Ashman
JO ANNE B. BARNHART,                )
Commissioner of Social Security,    )
                                    )
                Defendant.          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie B. Ozier ("Plaintiff"), brings this suit pursuant to 42 U.S.C. § 405(g) for

judicial review of the final decision of Commissioner Jo Anne B. Barnhart of the Social Security

Administration ("Commissioner"), who denied his application for Disability Insurance Benefits

("DIB")[1] and Supplemental Security Income ("SSI")[2] under Title II of the Social Security Act.

Before the Court are the parties' motions for summary judgment. Both parties have consented to

have this Court conduct any and all proceedings in this case including the entry of final

judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons set forth below, the Court

remands the cause for further proceedings consistent with this opinion.

---

[1] Disability Insurance Benefits provide a minimum level of benefits to persons under the
age of sixty-five who a) have a disability as defined in 20 C.F.R. § 404.1505; and qualify as fully
insured by having sufficient Social Security earnings as provided in 20 C.F.R. § 404.130. 20
C.F.R. § 404.320(b).

[2] Supplemental Security Income provides financial assistance to needy individuals who
are sixty-five years of age or over, or are blind, or are eighteen years of age and permanently and
totally disabled. 42 U.S.C. §§ 1381, 1382.



# I.    Procedural History

In July of 2001, Plaintiff applied for DIB and SSI, claiming disability due to sarcoidosis[3] since November 10, 2000. (R. at 154, 324.) After his application was denied both initially and upon reconsideration by the Social Security Administration (R. at 120-29), Plaintiff requested a hearing before an administrative law judge ("ALJ"), (R. at 130). A hearing before the ALJ took place on August 15, 2002, (R. at 47), where Plaintiff, who was represented by counsel, a medical expert, and a vocational expert testified. (R. at 49-117.) On October 22, 2002, the ALJ issued a decision finding that Plaintiff was not disabled. (R. at 4, 46.) This became the final decision of the Commissioner on March 14, 2003, when the Appeals Council denied Plaintiff's request for review. (R. at 4-5.) Plaintiff now seeks judicial review of that decision.

# II.    Background

## A.    Facts and Medical History

Plaintiff was born on October 17, 1967, and was 35 years old when the ALJ issued his decision. (R. at 47, 154.) He completed the eleventh grade and has vocational training in security work. (R. at 172.) His past work experience includes jobs as security guard, delivery van driver, fish packer, laborer, forklift driver, shoe retailer, package handler and warehouseman. (R. at 175.) Plaintiff was working as a fish packer in a warehouse before he was terminated in November 2000. (R. at 166-67.)

---

[3] Sarcoidoisis: a systemic granulomatous disease of unknown cause, especially involving the lungs with resulting interstitial fibrosis, but also involving lymph nodes, skin, liver, spleen, eyes, phalangeal bones, and partoid glands. STEDMAN'S MEDICAL DICTIONARY, TWENTY-SEVENTH EDITION, 1593 (2000), hereinafter "STEDMAN'S."

Plaintiff initially visited with Dr. Blasej Lojewski on July 15, 1999. (R. at 208.) There were two additional visits between this initial check-up and August 19, 1999. (R. at 206-07.) On November 28, 1999, Plaintiff was admitted into the hospital and diagnosed with pneumonia. (R. at 213.) Chest x-rays taken during this hospitalization showed bilateral interstitial[4] infiltrate[5] most prominent in the upper lobes with impressions of hilar[6] and mediastinal[7] lymphadenopathy,[8] abnormalities suggesting sarcoidosis. (R. at 278-80.) Additional chest x-rays performed on December 1, 1999 and May 13, 2000 found that the overall appearance of Plaintiff's chest had not significantly changed since the initial exam, and again stated that sarcoidosis should be considered. (R. at 276-77.) Dr. Lojewski re-examined him six more times between December 2000 and June 2001. (R. at 282-88.) On June 23, 2001, Plaintiff was admitted to the hospital for midsternum chest pain and difficulty swallowing. (R. at 294.) An x-ray of Plaintiff's chest conducted on June 14, 2001, showed no change since May 2000. (R. at 276.) A CT scan of the thorax was described as compatible with sarcoidosis. (R. at 219, 260.) Dr. Lojewski examined Plaintiff on six more occasions during the remainder of 2001. (R. at 289, 291). On

---

[4] Interstitial: Relating to spaces within a tissue or organ, but excluding such spaces as body cavities or potential space. STEDMAN'S at 914.

[5] Infiltrate: a cellular infiltration in the lung as inferred from appearance of a localized, ill-defined opacity on a chest radiograph; commonly used to describe a shadow on a radiograph. STEDMAN'S at 896.

[6] Hilar: pertaining to the hilum, the part of an organ where nerves and vessels enter or leave. STEDMAN'S at 821.

[7] Mediastinal: relating to the mediastinum, the medium partition of the thoracic cavity (citation omitted). STEDMAN'S at 1076.

[8] Lymphadenopathy: any disease process affecting a lymph node or lymph nodes. STEDMAN'S at 1038-39.

August 13, 2001, a biopsy upon a skin lesion on Plaintiff's nose was conducted at Dr. Lojewski's request. (R. at 218.) Tests on the specimen found it consistent with sarcoidosis. (Id.) Plaintiff continued treating with Dr. Lojewski through the beginning of 2002. (R. at 290). His treatment consisted primarily of Prednisone, a steroid and anti-inflammatory. (R. at 81, 248.)

On October 24, 2001, Plaintiff underwent a physical exam by Dr. Peter Biale at the request of the Commissioner. (R. at 242.) Plaintiff stated during this examination that after November 2000 he became sick frequently and experienced severe shortness of breath with minor exertion, lower back pain especially when he bent, sat, or stood for prolonged periods of time, or when he tried to lift twenty to thirty pounds. (Id.) He also stated that he suffered occasional cramping in his hands. (Id.) Dr. Biale reported that Plaintiff appeared to be a person in no acute distress, well-nourished, and cooperative. (R. at 243.) Dr. Biale noted rhonchi[9] and wheezing, as well as rapid breathing that limited Plaintiff's ability to climb one flight of stairs or walk one block. (R. at 245.) He noted this shortness of breath as consistent with sarcoidosis. (Id.) The remainder of the exam reported normal results–the lumbosacral spine revealed a full range of motion, and Plaintiff showed normal grip strength. (R. at 244-45.)

On November 5, 2001, Dr. Frank Jimenez reviewed Plaintiff's medical records for the State Disability Determination Agency ("State Agency") and completed a Residual Functional Capacity Assessment ("RFC"). He found that despite sarcoidosis and cramps in his hands,

---

[9] Rhonchi: an added sound with a musical pitch occurring during inspiration or expiration, heard on auscultation of the chest and caused by air passing through bronchi that are narrowed by inflammation, spasm of smooth muscle, or presence of mucus in the lumen. STEDMAN's at 1568.

Plaintiff could perform medium level work[10] with no postural limitations.[11] (R. at 225-32.) On March 5, 2002, State Agency physician Dr. Boyd McCracken reviewed this assessment and affirmed it as written. (R. at 232.)

On March 2, 2002, treating physician Dr. Lojewski prepared a respiratory report form for the State Agency. (R. at 246-54.) He reported a diagnosis of sarcoidosis and a left shoulder sprain. (R. at 247.) He noted Plaintiff was experiencing shortness of breath on exertion, (R. at 248), along with wheezes, rhonchi and prolonged expiration, (R. at 247). Dr. Lojewski stated that Plaintiff could not work, and that shortness of breath limited his daily activities. (R. at 248.) He also noted that Plaintiff's condition was worsening despite treatment. (Id.) In addition to this report, Dr. Lojewski submitted a pulmonary function test performed on December 27, 2001. (R. at 249.) Initial values were nearly normal, however, forced expiration flow and maximal voluntary ventilation were substantially reduced, consistent with sarcoidosis and complaints of frequent fatigue and shortness of breath. (R. at 249, 313-14.)

Plaintiff continued to see Dr. Lojewski in 2002. (R. at 292-93.) X-rays of Plaintiff's left shoulder on March 4, 2002 showed mild degenerative changes and small cystic changes of his AC joint. (R. at 274.) On June 13, 2002, Dr. Lojewski filled out a physical capacities assessment form for Plaintiff's disability claim. (R. at 272-73.) He noted that Plaintiff could not work in jobs requiring minimal lifting, indicated Plaintiff's residual capacity to stand and/or walk

_____

[10] The exam report indicated Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour work day, and sit for a total of about 6 hours in an 8-hour workday. (R. at 226.)

[11] Dr. Jimenez indicated Plaintiff's records established no limitations in the patient's ability in climbing ramps/stairs/ladder/rope/scaffolds, balancing, stooping, kneeling, crouching, or crawling. (R. at 227.)

in a work setting was two hours or less, and that Plaintiff could sit for a period of four hours during a given workday. (R. at 272.) He indicated that Plaintiff had "moderate" restrictions on balancing, kneeling, squatting, handling, feeling, and seeing, and that he had "severe" restrictions on climbing, bending, pushing, pulling and reaching. (Id.) The doctor wrote that shortness of breath caused by sarcoidosis and other system involvement limited Plaintiff's ability to work and that the disability was permanent. (R. at 273.)

In September 2002, after the hearing, Dr. Lojewski answered written questions drafted by Plaintiff's attorney. (R. at 313-14.) Dr. Lojewski reported that he prescribed Prednisone to his client because steroid treatment is best for sarcoid exacerbations and that it was common for patients suffering from this disease to complain of pain, swelling, and stiffness in their hands and feet. (R. at 314.) He also recommended that Plaintiff abstain from physical work at this time because he had trouble breathing at rest. (Id.)

### B.    Plaintiff's Testimony

During the August 15, 2002 hearing in front of the ALJ, Plaintiff testified that he experienced pain in the middle joint of each of his fingers, (R. at 75-76), that prevented him from opening jars and screwing in light bulbs, (R. at 91-92), and suffered a sticking pain in the middle joint of his toes approximately twice a week that prevented him from walking, (R. at 76-78). He took Prednisone every day and, following Dr. Lojewski's instructions, doubled the dosage of the drug during episodes of severe pain. (R. at 79-80.) In addition, he stated that walking two and a half blocks caused coughing and wheezing, (R. at 85-88), cramping in his feet prevented him from standing for long periods of time, (R. at 88), fatigue necessitated that he lay down during

the day, (R. at 89), severe coughing has led to episodes of dizziness and nausea, and shortness of breath caused him to wake up during the night, (R. at 90). Plaintiff also testified that he did not cook, drive, wash dishes or grocery shop. (R. at 92). In the last year, he has also stopped helping his wife with the laundry. (Id.)

### C.    Medical Expert's Testimony

Medical expert Dr. Ernest Mond testified after reviewing Plaintiff's medical records at the request of the ALJ. (R. at 51, 141.) The doctor stated that the medical record painted a picture very compatible with sarcoidosis. (R. at 52.) The pulmonary function tests in the record, which tested Plaintiff's lung function, (R. at 54), showed some impairment in the diffusion capacity of his lungs, (R. at 59), but were not so severe as to meet the criteria for disabling chronic obstructive pulmonary disease. (R. at 53-54, 62-63.) However, the doctor stated that these diffusion capacity studies were compatible with sarcoidosis. (R. at 55.)

Dr. Mond testified that Plaintiff's endurance during the day would be affected by his condition, and that he would suffer fatigue related to his shortness of breath. (R. at 94.) Plaintiff was also "clearly subject to acquiring infections and being more susceptible to them." (R. at 56.) Dr. Mond stated that the assessment by the State Agency physicians indicating that Plaintiff could lift fifty pounds on occasion was "too generous," (R. at 70), however, he disagreed with Dr. Lojewski's assessment that Plaintiff lacked endurance even for work requiring only minimal lifting,[12] (R. at 68).

---

[12] Minimal lifting: under five pounds. (R. at 272.)

Dr. Mond initially stated that, based on the record of evidence, he believed Plaintiff's RFC allowed him to occasionally lift 20 pounds, frequently lift ten pounds, and have the capability to stand throughout the eight hour workday, although walking would be limited to two hours. (R. at 66-67.) With the exception of minor problems that may occur due to pushing and pulling with Plaintiff's left upper extremity, pushing and pulling, as well as the occasional crouch, crawl and squat would be unimpaired. Dr. Mond recommended that Plaintiff avoid ladders, ropes or scaffolds, and even minimal concentrations of pulmonary irritants. (R. at 67.) Following Plaintiff's testimony and observing his condition during the ALJ's hearing, Dr. Mond testified that he would further restrict Plaintiff's lifting to ten pounds occasionally and less than ten pounds frequently. Standing should be limited to two, and walking to less than two hours of an eight hour work day. Sitting would be unimpaired. (R. at 93.) Although Dr. Mond stated that Plaintiff would have difficulty compared to the "normal person" in getting up and traveling a moderate distance to work, he believed that Plaintiff's motivation was a factor to consider in evaluating his ability to overcome impediments, so long as he suffered no intermittent acute infections. (R. at 95.)

### D. Vocational Expert's Testimony

Given Plaintiff's age, education, work experience and RFC[13] identified by Dr. Mond, the vocational expert ("VE") testified that Plaintiff qualified for unskilled occupations offering

---

[13] Occasionally lifting 10 pounds; frequently lifting less than 10 pounds; standing limited to 2 hours/workday; walking limited to less than 2 hours/workday; unimpaired sitting; unrestricted pushing/pulling with the exception of using his left upper extremity; occasional crouching, crawling, squatting unimpaired. (R. at 93.)

short-term on-the-job training, which required only a sedentary level of exertion. (R. at 111.) Examples of jobs fitting this category identified by the VE included mail sorter, surveillance monitor, and sedentary cashier.[14] (Id.) The VE stated that excessive, chronic coughing would prevent an individual from an occupation that required him to work with others, (R. at 112), and unscheduled breaks of an hour to lie down during the workday would be viewed as unreasonable, and employers would not be expected to accommodate an employee with a place to lie down during his lunch breaks. (R. at 113.)

## III.  ALJ's Findings

The ALJ made the following specific findings (as taken verbatim from his October 22, 2002 decision):

1.  The claimant met the disability insured status requirements of the Act at all times relevant to this decision.

2.  The claimant did not engage in any substantial gainful activity after the alleged disability onset date of November 10, 2000.

3.  The claimant has established the existence of at least one, medically determinable, severe impairment, or its equivalent.

4.  Either singly or in combination, the claimant's medically determinable impairments, while considered "severe," do not meet or equal any in Appendix 1, Subpart P, Regulations No. 4.

5.  The claimant's allegations of symptoms have been considered in the assessment of his residual functional capacity, but for the reasons explained in the body of this decision, his allegations are not fully credited.

---

[14] Within the Chicago standard metropolitan statistical area there are 1,500 mail sorter jobs, 1,000 surveillance monitor jobs, and 1,500 sedentary cashiers jobs in this region of the economy. (R. at 111.)

6.      The claimant retains the capacity to perform the exertional and nonexertional requirements of work except for lifting and/or carrying up to 10 pounds more than occasionally, or less than 10 pounds more than frequently; to stand two, and to walk less than two, hours in an eight-hour workday; climbing ladders, ropes, or scaffolds; more than occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling; having more than concentrated exposure to pulmonary irritants; or understanding, remembering, or carrying out complex or detailed instructions.

7.      The claimant is unable to perform his past relevant work, which required medium to heavy physical exertion.

8.      The claimant is a younger individual.

9.      The claimant has the equivalent of a high school education.

10.      The claimant does not have any work skills transferable to work within the established residual functional capacity.

11.      If the claimant could perform the full range of sedentary work, considering his age, education, and lack of transferable work skills, medical-vocational rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

12.      Notwithstanding the claimant's additional limitations, there is other work existing in significant numbers in the national economy to which the claimant could be expected to make a vocational adjustment and perform on a sustained basis. Examples of such work are the occupations of mail sorter, surveillance monitor, and cashier.

13.      The claimant was not "under a disability" or "disabled," within the meaning of the Act, at any time through the date of this decision.

## IV.   Discussion

Under 42 U.S.C. § 405(g) a district court may affirm, modify or reverse an ALJ's

decision. Review of the decision is limited, however, and the ALJ's findings must be upheld if

supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where conflicting evidence would allow reasonable minds to differ as to whether a claimant is entitled to benefits, it is the ALJ who must make that determination. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The district court must review the record in its entirety, but may not reweigh the evidence, or substitute its own judgment for that of the ALJ. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). On the other hand, the court's review must be "more than an uncritical rubberstamp." *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1983).

If an ALJ commits an error of law, however, reversal is required without regard to the volume of factual evidence. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999). The ALJ must not "play doctor" by making his own independent medical findings, but must make apparent the path of his reasoning. *Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996). The evidence must logically lead to his conclusion. *Id.* at 971. Even if there is enough evidence in the record to support the denial of benefits, the district court cannot uphold the decision if the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

To qualify for disability benefits under 42 U.S.C. § 423(a)(1), a claimant must be "under disability." This term is defined as "the inability to engage in any substantial gainful[15] activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[15] Substantial gainful activity means work that: (1) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510.

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must have a severe impairment[16] that makes him unable to perform his past relevant work or any other substantial gainful work that exists in the national economy. If the claimant is found unable to do past relevant work, the Social Security Administration will use the same RFC assessment, taking into account the claimant's vocational factors of age, education and work experience, to determine his ability to perform other work. 20 C.F.R. § 404.1505(a).

In deciding whether or not Plaintiff met his burden of establishing disability, the ALJ applied the standard five-step inquiry. *See* 20 C.F.R. § 404.1520; *Herron v. Shalala*, 19 F.3d 329, 333 n.8 (7th Cir. 1994). He found that Plaintiff was not presently employed, and although he suffered from severe impairments, they did not meet or exceed the level of severity contemplated under any listing included in Appendix 1 to Subpart P, Regulations No. 4. (R. at 39.) These findings required the ALJ to proceed to the fourth step in the five step inquiry.

The ALJ found at step four that Plaintiff could not perform his past relevant work which required a medium level exertion. At step five, the burden shifted to the ALJ to establish that Plaintiff's RFC enabled him to perform other work in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). The ALJ denied disability benefits at this step because Plaintiff, even with his impairments, maintained an RFC that qualified him for a significant number of sedentary, unskilled jobs existing in the national economy. (R. at 44-45.)

---

[16] A disabling impairment is defined as "an impairment (or combination of impairments) which, of itself, is so severe that it meets or equals a set of criteria in the Listing of Impairments in appendix 1 of this subpart or which, when considered with your age, education, and work experience, would result in a finding that you are disabled under § 404.1594." 20 C.F.R. § 404.1511(a).

The ALJ based this finding on the testimonies of the medical expert and the VE, and concluded Plaintiff was not disabled. (R. at 44-45.) Plaintiff now argues that the ALJ erred in his RFC determination by failing to accept the treating physician's assessment as controlling, by rejecting Plaintiff's testimony as to his limitations in daily living, and by misconstruing the testimony of the VE in concluding Plaintiff qualified for a significant number of jobs in the national economy.

**A.    The ALJ's determination to follow the consultative rather than the treating physician's medical opinion to aid in determining Plaintiff's RFC is unsupported by substantial evidence, and therefore improper.**

Plaintiff argues that the medical evidence submitted by Plaintiff's treating physician, Dr. Lojewski, should have been given controlling weight in determining whether he was disabled. The Commissioner replies that the ALJ properly weighed conflicting medical opinions of record, and was therefore justified in choosing to accord less weight to the treating physician.

The weight accorded to a physician's testimony and diagnosis depends upon the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(d). If well-supported by medical evidence and not inconsistent with other substantial evidence, an ALJ should give controlling weight to a treating physician's opinion because of his greater familiarity with the condition and circumstances of the claimant. 20 C.F.R. § 416.927(d)(2); *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir. 1982). When the ALJ, however, decides against giving the treating physician's testimony controlling weight in favor of a consultative doctor's evidence, he must articulate logical reasons for this determination. 20 C.F.R. § 416.927(d)(2); *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.

1985). Here, the ALJ found the treating physician's opinion that Plaintiff was unable to work unsupported by the medical expert's diagnosis, and as a result, chose to give less weight to evidence submitted by Dr. Lojewski .

The record reflects three varying medical opinions on Plaintiff's condition. The two state agency reviewing doctors concluded that Plaintiff could perform medium level work, (R. at 225-32); treating physician Dr. Lojewski reported that he could not perform even light[17] or sedentary[18] work, (R. at 248); and medical expert Dr. Mond testified that Plaintiff could perform sedentary work, (R. at 93). In light of these differences in medical opinions, it was within the ALJ's discretion to refrain from giving controlling weight to the treating physician's evaluation of Plaintiff's RFC, and more weight to the medical expert's opinion. However, the ALJ failed in his obligation to accurately support his weighing of one doctor's opinion over the others with substantial evidence in the record. *See Stephens*, 766 F.2d at 289.

The ALJ cited supposed internal inconsistencies in the treating physician's evidence as a basis for which he could discount the weight of medical evidence submitted by treating physician, Dr. Lojewski. *See Clifford v. Apfel*, 227 F.3d at 863, 871 (7th Cir. 2000). The ALJ concluded Plaintiff did have sarcoidosis, and credited Dr. Lojewski's opinions as to the nature of Plaintiff's shortness of breath. However, he did not accept that the "symptoms . . . claimant

---

[17] Light work: generally characterized as (1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding and turning objects. 20 C.F.R. §§ 404.1567(b), 416.967(b).

[18] Sedentary work: a claimant can do sedentary work if he can (1) sit up for approximately six hours of an eight-hour workday; (2) lifting ten pounds occasionally; (3) occasionally walking or standing for no more than about two hours of an eight-hour workday. 20 C.F.R. §§ 404.1567(a), 416.967(a).

experience[d] between these episodes of exacerbations [were] as intense, frequent, or longlasting as he and his treating doctor [had] reported."[19] (R. at 43.) He reasoned that Dr. Lojewski's treatment was inconsistent with the alleged severity of Plaintiff's symptoms, because he did not find "well-documented efforts by the treating source to achieve amelioration, if not elimination, of the claimant's relief of symptoms that the claimant describe[d] as continuously debilitating." (Id.) However, the assumption that nothing was being done to alleviate these symptoms was drawn from illegible treatment notes that, in actuality, may or may not have documented these efforts. Therefore, the ALJ cannot rely on this line of reasoning to show an inconsistency in treatment that would justify discounting Dr. Lojewski's opinion, given the fact that the ALJ's conclusion was based on notes he could not read.

To further support his decision, the ALJ attempted to identify several inconsistencies between the treating physician's reports and other medical evidence in the record as justification for giving more weight to the testimony of medical expert, Dr. Mond. (R. at 40.) First, he noted that Dr. Lojewski's opinion that "sarcoidosis will get worse with the time" is irreconcilable with medical information submitted for the record which states that sarcoidosis is "chronic, waxing and waning" over many years. (R. at 314, 317.) However, in addition to the argument that it is possible for a condition to get progressively worse, while still waxing and waning in the interim, the medical expert actually supported the treating physician's opinion of sarcoidosis during his testimony before the ALJ where he stated that sarcoidosis is "not a matter of remissions and

---

[19] Dr. Lojewski reported that between acute exacerbations of his disease, Plaintiff had wheezing, rhonchi, and prolonged expiration in both lungs. (R. at 247.) Pulmonary function tests submitted by Dr. Lojewski showed, in the opinion of the medical expert, abnormalities. (R. at 42.) The Plaintiff's medical record documents a history of coughing and shortness of breath. (R. at 278-80.)

exacerbations" but of a disease "which either stays stable and improves or it chronically gets worse." (R. at 94.) Because the opinions of Dr. Mond and Dr. Lojewski are consistent with one another, and reconcilable with other medical evidence submitted to the record, the Court finds the ALJ incorrectly identified an inconsistency upon which he could rely upon in supporting his decision to weigh one doctor's opinion over the other.

Second, the ALJ accorded less weight to Dr. Lojewski's evidence, reasoning that the treating source's statement that shortness of breath on exertion precluded his patient from working conflicted with a disability report where Plaintiff wrote he could not work due to pain in his hands and feet, but did not mention shortness of breath. (R. at 40, 166, 248.) Other documents filled out by Plaintiff, however, included breathing complaints. For example, Plaintiff reported in his Bureau of Disability Determination Services' Activities of Daily Living Questionnaire that problems in breathing made it difficult for him to finish tasks that required standing or carrying items. (R. at 188.) Additionally, Plaintiff's statement in his request for a disability hearing before the Social Security Administration included complaints of shortness of breath after long walks. (R. at 197.) "The many interviews and forms required to apply for disability benefits should not be viewed as traps for slightly varied accounts . . . ." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Plaintiff's failure to list shortness of breath as the reason he is precluded from work on his Social Security disability report, in light of other forms in the record which are consistent with Dr. Lojewski's assessment, should not be relied upon as the sole foundation to lessen the weight given to the treating physician's opinion regarding the effects of Plaintiff's shortness of breath in his ability to work. *See id.* (minor discrepancy in forms should not be used as sole reason to find incredibility). In any event, the ALJ concluded

- 16 -

that Plaintiff's complaints of shortness of breath were credible, also consistent with Dr. Lojewski's opinion, just not its severity. Therefore, the Court finds the ALJ improperly relied upon these variations in evidence to weigh the medical expert's opinion over that of the treating source.

Third, the ALJ stated that although Dr. Lojewski's treatment notes documented that Plaintiff was seen frequently enough to suggest a significant problem, they were almost entirely unreadable. (R. at 40.) The difficulty in deciphering the treating doctor's progress notes poses an obstacle in following the details of each of Plaintiff's visits to his office. However this fact is not an inconsistency that provides a basis for which the ALJ can discount the medical evidence of Dr. Lojewski in the record. Perhaps he should have sought clarification from Dr. Lojewski instead of discounting his notes.

The ALJ failed to articulate inconsistencies in the evidence submitted by Dr. Lojewski that justify a greater weight being placed on the medical expert's testimony as compared to that of the treating physician. Furthermore, a review of the record suggests that reliance on Dr. Mond's opinion may have been misplaced, considering the instances during his testimony where he stated he was unsure as to how to interpret Plaintiff's test results and treatment.[20] Because the ALJ did not shed light on legitimate reasons behind his weighing of the medical evidence, the Court finds the ALJ erred in discounting the opinion of the treating source.

---

[20] Dr. Mond admitted not knowing the significance of the most abnormal values of Plaintiff's pulmonary function test, (R. at 72), had trouble making sense of Plaintiff's Prednisone prescription, (R. at 80-81), and decided to change his initial RFC assessment to be more restrictive after observing Plaintiff during the hearing before the ALJ, (R. at 93).

**B.** **The ALJ fails to articulate inconsistencies in Plaintiff's testimony and the medical record to support his credibility finding.**

Plaintiff argues that substantial evidence fails to support the ALJ's finding that he is not credible. In considering the credibility of Plaintiff's testimony that he cannot perform any work activity, the ALJ concluded that although he believes that Plaintiff's sarcoidosis causes intense symptoms including shortness of breath and fatigue, they are not so severe as to limit him from all work. (R. at 43-44.)

Although an ALJ's determination of a claimant's RFC may be guided largely by medical evidence and opinions, non-medical factors, such as the credibility of the claimant, are considered as well. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); 20 C.F.R. §§ 404.1545, 416.945. An ALJ's determination of credibility will not be disturbed unless it is patently wrong. *Zurawski*, 245 F.3d at 887. The ALJ, however, must give specific reasons as to how he determined credibility. *Id.* A credibility finding often involves inarticulable elements that cannot be deciphered from a transcript, and the Court will not disturb such a finding. *See Kastman v. Barnhart*, 01 C 0150, 2002 WL 1461499, at *11 (N.D. Ill. July 3, 2002). However, when a determination is based on "objective inconsistency or fundamental implausibility," the hearing officer "has no special advantage over a reviewing court in determining credibility." *Dray v. R.R. Ret. Bd.*, 10 F.3d 1306, 1314 (7th Cir. 1993) (quotations and citations omitted).

Once the presence of a medically determinable physical or mental impairment is established that could reasonably be expected to produce the pain alleged, but the intensity or persistence of the pain is unsubstantiated by the medical record, the ALJ is obliged to examine and weigh all the evidence including observations by treating and examining physicians,

- 18 -

third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain

medication taken, and aggravating or precipitating factors to evaluate how much the claimant's

impairment affects his ability to work. *Herron*, 19 F.3d at 334; 20 C.F.R. § 404.1529; SSR

96-7p.

The ALJ credited Plaintiff's report of experiencing shortness of breath as consistent with

Dr. Lojewski's opinion, but did not believe it to be so severe as to keep him from working, as the

treating doctor and Plaintiff reported. (R. at 43.) The ALJ also concluded that although some

joint pain was likely, Plaintiff's testimony as to the severity and persistence of those symptoms

were unsubstantiated by the medical evidence. (Id.) The ALJ reasoned that the medical record

did not reflect actions taken by Plaintiff that reasonably could be expected by an individual

experiencing such allegedly continuously debilitating symptoms for nearly two years. (Id.) The

Commissioner encourages the Court to rely upon Social Security Ruling 96-7p, which states that

"the individual's statements may be less credible if the level or frequency of treatment is

inconsistent with the level of complaints . . . ." The Commissioner argues the ALJ correctly

relied on Dr. Lojewski's treatment notes to conclude that although other medical record

established Plaintiff's intense symptoms, the treatment notes did not substantiate the claim that he

experienced them at all times or that he could not sustain the work activities within the

restrictions stated by Dr. Mond. (Id.) This argument is problematic, however, because, as

discussed previously, the progress notes are unreadable and cannot be used to support a

conclusion that the treatment given to Plaintiff is inconsistent with the level of his complaints.

The ALJ also based his credibility finding of Plaintiff on the treating physician's supposed

silence concerning his patient's complaints of joint pain in his hands and feet. (R. at 40.) An

ALJ may use a doctor's diagnosis that is contrary to a patient's testimony to support a finding that the claimant is not credible. *See e.g., Diaz*, 55 F.3d at 308 (claimant found not credible when he testified to more severe restrictions in his ability to work as compared to doctor's findings). However, in cases such as *Diaz*, the findings by the ALJ did not rely on a doctor's omission or silence concerning the severity of a certain symptom the patient was experiencing, as the ALJ in this instance did. Rather, a plaintiff's testimony regarding his ability to work was discredited based on a clearly contradictory assessment by a medical doctor. Although, in the instant case, Dr. Lojewski does not specify the severity of Plaintiff's joint pain, a review of the record, contrary to the ALJ's opinion, suggests acknowledgment of these complaints by Dr. Lojewski through his treatment of Plaintiff's pain with Prednisone. (R. at 43, 79-80, 314.) The Court therefore finds the ALJ cannot discredit Plaintiff's testimony on the incorrect conclusion that Dr. Lojewski's diagnosis is contrary to Plaintiff's statements regarding joint pain.

The ALJ also supported his credibility finding by stating it was "significant" that Plaintiff "did not exhibit the appearance of an individual who has been chronically ill for a continuous period of two years." (R. at 44.) It is unclear, however, as to how the ALJ came to this conclusion. If the ALJ thought Plaintiff was exaggerating during his testimony as to the severity of his symptoms, this Court would not disturb such a conclusion. *See Diaz*, 55 F. 3d at 308 (claimant not found credible because he was "making an effort to appear disabled"). On the other hand, if the ALJ is making a finding based on the idea of what a claimant who has been chronically ill for two years should look like from a medical standpoint, the ALJ must support his conclusion with testimonial or medical evidence in the record. *Compare Zurawski*, 245 F.3d at 887-88 (ALJ should have explained why claimant's testimony and complaints of pain were

inconsistent with medical evidence), *with Diaz*, 55 F.3d at 308 (finding that claimant was not

credible in stating his functional limitations appropriate when reasons articulated by ALJ were

supported by medical record). In either case, however, whether the ALJ was basing his finding

on the demeanor of Plaintiff, or his interpretation of Plaintiff's testimony and medical evidence in

the record, a mere conclusory statement that a claimant does not appear to be chronically ill is not

enough.[21] *See Sarchet*, 78 F.3d at 308-09 (ALJ must explain what she meant by her

determination that claimant's testimony was "melodramatic"); *Kastman*, 2002 WL 1461499, at

*13 (ALJ must make more than a conclusory finding that claimant's testimony as to his medical

problems not credible); *Zurawski*, 245 F.3d at 887 (credibility determination by ALJ must be

articulated and supported by evidence in case record, single conclusory statement not enough).

Therefore, it is necessary on remand for the ALJ to support and articulate his reasons for

believing it "significant" that Plaintiff's appearance did not resemble an individual suffering from

a chronic illness.

Because we have not found the inconsistencies in evidence that were relied upon to

discredit Plaintiff, and because there was not a sufficient articulation of the evidentiary

assessment used to explain why Plaintiff did not appear chronically ill, this Court must remand in

---

[21] The ALJ cites to a medical examination performed, at the request of the Commissioner, on October 24, 2001, approximately ten months before Plaintiff's hearing before the ALJ, to support his finding that Plaintiff did not appear disabled. This report states that the "patient is a well nourished, well developed, cooperative male in no acute distress." (R. at. 243.) It is unclear as to whether the ALJ is using this evidence to support a finding that Plaintiff was exaggerating, or in the alternative, a finding that Plaintiff did not fit the appearance profile of a chronically ill individual from a medical standpoint.

order to assure that the ALJ based his credibility determination on either the demeanor of

Plaintiff during his testimony, or medical evidence in the record.

**C.     The ALJ's hypothetical to the VE was flawed and therefore
cannot be used to support a finding that Plaintiff is qualified to
perform work in the national economy.**

Plaintiff argues that the ALJ misrepresented the VE's testimony regarding his chronic

cough, and may have reached a different conclusion as to the jobs he was capable of performing,

had he understood the VE's statements.

Although reliance on a VE's testimony can lead an ALJ to a conclusion that a claimant

can perform the demands of other work existing in significant numbers in the national

economy,[22] the hypothetical question given to the VE must fully set forth the impairments

suffered by a plaintiff to the extent that they are supported by the medical evidence. *Dyson v.*

*Massanari*, 149 F. Supp. 2d 1018, 1024 (N.D. Ill. 2001). The combined effect of all the

claimant's ailments must be considered regardless of whether such an impairment would be

sufficiently severe if considered on its own. *Martinez v. Barnhart*, 02 C 2354, 2003 WL

22764594, at *8 (N.D. Ill. Nov. 19, 2003); 20 C.F.R. §§ 404.1523, 416.923. Here, the ALJ erred

in failing to include Plaintiff's chronic coughing in his hypothetical to the VE, and therefore it

cannot be relied upon by the ALJ to show Plaintiff is qualified for a significant number of jobs

---

[22] Step 5 of the sequential evaluation process to determine disability requires the ALJ to
show that the claimant can, despite his impairments, meet the physical and mental demands of
other work existing in significant numbers in the national economy. 20 C.F.R.
§ 404.1520(a)(4)(v).

existing in the national economy. *See Dyson*, 149 F. Supp. 2d at 1024 (hypothetical given to VE by ALJ not complete because it did not include certain aspects of claimant's uncontradicted complaints, like inability to walk for half a block, and the need for claimant to constantly shift positions).

The hypothetical given to the VE during the hearing before the ALJ was based on the medical expert's RFC assessment of Plaintiff. (R. at 109). This hypothetical premise included Plaintiff's ability to lift, stand, walk, sit, push and pull. (R. at 109-10). However, numerous references in the record, including hospital reports and acknowledgment of Plaintiff's symptoms, by the ALJ and the medical expert during the hearing itself, recognized Plaintiff's coughing as a severe symptom. (R. at 55, 85-86, 90-91, 278.) The Court finds that the ALJ erred by disregarding the medical evidence of Plaintiff's coughing and failing to include this symptom in the hypothetical given to the VE.

The VE, upon examination by Plaintiff's attorney during the ALJ's hearing, was asked whether chronic coughing or laying down for an hour during the workday would preclude an individual from the jobs Plaintiff qualified for according to Dr. Mond's RFC assessment. (R. at 112.) The ALJ, interpreting the VE's answer to this question stated in his opinion that "while chronic coughing might be distracting to others, it would not preclude such work." (R. at 45.) However, the VE actually stated in his testimony that an individual experiencing chronic, excessive coughing would be a distraction to others, and would have difficulty reconciling that symptom with an occupation requiring him to work around others. (R. at 112.) Therefore, the ALJ erred when he failed to credit the VE's testimony regarding the effect of Plaintiff's coughing

on his ability to work. *See Erickson v. Shalala,* 9 F.3d 813, 817 (9th Cir. 1993) (ALJ must take into account all factors that may have a significant impact on an individual's ability to work).

Because most of the occupations listed by the VE as appropriate for Plaintiff require him to be around others during the course of the day, it is necessary to redetermine the types of jobs available to Plaintiff, taking into account his chronic coughing, if found credible. The Court finds that the VE's conclusion that Plaintiff could perform certain jobs he specified in the national economy, which the ALJ relied upon in deciding that Plaintiff was not disabled, was based on an incomplete hypothetical premise.

## V. **Conclusion**

For the reasons set forth above, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's motion for summary judgment. Accordingly, the case is remanded to the Commissioner for further proceedings consistent with this opinion.

**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: August 10, 2004.

Copies have been mailed to:

ROBERT G. WHITE, Esq.                     MS. MALINDA HAMANN
6832 West North Avenue                    Special Assistant U.S. Attorney
Chicago, IL 60635                         200 West Adams Street
                                          30th Floor
                                          Chicago, IL 60606

Attorney for Plaintiff                    Attorney for Defendant